UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SATAN WEARS SUSPENDERS, INC., <br><br> Plaintiff, <br> v. <br><br> NICOLAS JAAR, DAVID HARRINGTON, MATADOR RECORDINGS, LLC, <br><br> Defendants. | CASE NO.  1:21-CV-00812-ER <br><br> **ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

I. PLAINTIFF'S ARGUMENTS THAT LACHES CANNOT BE INVOKED TO BAR ITS CLAIMS ARE BASELESS ...................................................................................... 2
    A.    Defendants Fully Stated the Grounds of Their Motion ......................................... 2
    B.    Laches Bars Both Injunctive Relief and Damages ................................................ 2
    C.    The Continuing Exploitation by Defendants Does Not Save Plaintiff's Claims .... 3

II. PLAINTIFF IGNORES THE GOVERNING LAW ON THE PRESUMPTION OF LACHES ............................................................................................................................. 5

III. PLAINTIFF FAILS TO REBUT THE PRESUMPTION OF LACHES ........................... 7

IV. PLAINTIFF FAILS TO REBUT THAT ITS DILUTION CLAIMS LACK MERIT ........ 9

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
    960 F.2d 1020 (Fed. Cir. 1992) .................................................................................................. 6

*Avon Prods., Inc. v. S.C. Johnson & Son, Inc.*,
    984 F. Supp. 768 (S.D.N.Y. 1997) .............................................................................................. 3

*Baker Mfg. Co. v. Whitewater Mfg. Co.*,
    430 F.2d 1008 (7th Cir. 1970) .................................................................................................... 7

*Bridgestone/Firestone Res., Inc. v. Automobile Club De L'Quest De La France*,
    245 F.3d 1359 (Fed. Cir. 2001) .................................................................................................. 4

*Capruso v. Vill. Of Kings Point*,
    992 N.Y.S.2d 469 (2014) ............................................................................................................ 5

*Columbia Cas. Co. v. Neighborhood Risk Mgmt. Corp.*,
    2015 WL 3999192 ...................................................................................................................... 7

*Conopco, Inc. v. Campbell Soup Co.*,
    95 F.3d 187 (2d Cir. 1996) ...................................................................................................... 4, 5

*Deere & Co. v. MTD Holdings Inc.*,
    2004 WL 324890 (S.D.N.Y. Feb. 19, 2004) ............................................................................... 3

*Ecumenical Task Force of the Niagara Frontier, Inc. v. Love Canal Area*
    *Revitalization Agency*,
    179 A.D.2D 261 (4th Dep't 1992) .............................................................................................. 3

*Excelled Sheepskin & Leather Coat Corp. v. Or. Brewing Co.*,
    897 F.3d 413 (2d Cir. 2018) ........................................................................................................ 5

*Federal Treasury Enters. Sojuzplodoimport v. Spirits Int'l, B.V.*,
    56 F. Supp. 3d 383 (S.D.N.Y. 2014) ....................................................................................... 2, 4

*Fitzpatrick v. Sony-BMG Music Entm't, Inc.*,
    2007 WL 2398801 (S.D.N.Y. Aug. 15, 2007) ......................................................................... 6, 8

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Harley-Davidson, Inc. v. O'Connell*,
  13 F. Supp. 2d 271 (N.D.N.Y. 1998) (cited by Plaintiff, Opp'n ) ........................................3, 8

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)..................................................................................................................10

*Hot Wax, Inc. v. Turtle Wax, Inc.*,
  191 F.3d 813 (7th Cir. 1999) ................................................................................................3, 4

*Ivani Contracting Corp. v. City of New York*,
  103 F.3d 257 (2d Cir. 1997) (§ 1983 action) ...........................................................................3

*Kars 4 Kids Inc. v. Am. Can!*,
  8 F.4th 209 (3d Cir. 2021) ........................................................................................................5

*Lang v. Retirement Living Publ'g Co., Inc.*,
  949 F.2d 576 (2d Cir. 1991)....................................................................................................10

*Ogilvy Grp. Sweden v. Tiger Telematics, Inc.*,
  2006 WL 547785 (S.D.N.Y. Mar. 7, 2006) .............................................................................3

*Oneida Cty., N.Y. v. Oneida Indian Nat'n of New York State*,
  470 U.S. 226 (1985)...................................................................................................................3

*Setevage v. Dep't of Homeland Sec.*,
  539 F. App'x 11 (2d Cir. 2013) ................................................................................................8

*Solow Bldg. Co., LLC v. Nine West Grp., Inc.*,
  2001 WL 736794 (S.D.N.Y. June 29, 2001) (Chin, J.), *aff'd*, 48 F. App'x 15
  (2d Cir. 2002)....................................................................................................................4, 6, 7

*Streetwise Maps, Inc. v. VanDam, Inc.*,
  159 F.3d 739 (2d Cir. 1998)....................................................................................................10

*Vaad L'Hafotzas Sichos*, *Inc. v. Kehot Publ'n Soc.*,
  935 F. Supp. 2d (E.D.N.Y. 2013) .......................................................................................4, 5

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**STATUTES**

15 U.S.C.
  § 1114(a) ...................................................................................................................9
  § 1117(a) .................................................................................................................10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6) .................................................................................................1, 2, 6

Rule 11 .................................................................................................................................8

Defendants respectfully submit this Reply Memorandum of Law in further support of their Motion to Dismiss in its entirety Plaintiff's First Amended Complaint, ECF No. 27 ("FAC"), pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion").[1]

## PRELIMINARY STATEMENT

While rife with blatant mischaracterizations of fact and law, Plaintiff's opposition ("Opp'n") offers no escape to the fatal impact of the presumption of laches on its claims.[2] The correct legal principles of this Circuit, applied to the actual undisputed facts in Plaintiff's own admissions and judicially noticeable facts establish that this case must be dismissed.

Plaintiff does not and cannot dispute that it waited over six years from when it first had knowledge of the alleged infringement in 2013 to file this lawsuit, and that it had ***no contact*** with Defendants from 2014 to early 2021, when it threatened this lawsuit on the eve of Defendants' album release.[3] As it also alleged, Plaintiff cannot dispute that Defendants have continuously used their mark DARKSIDE, openly and notoriously, on their music products in commerce from 2011 to present. Nor can it dispute that this claim centers on a widely-used weak moniker—"Darkside"—used by countless third parties. Based on this undisputed record, and pursuant to binding Second Circuit law, laches is *presumed*. Because Plaintiff has not shown any rebuttal

---

[1] Terms are as defined in Defendants' opening brief ("Memo.").

[2] Plaintiff largely ignores or misstates the legal authorities on the presumption of laches and, to confuse matters and deflect from the fact that it cannot overcome the presumption of laches, concocts baseless legal arguments that are easily rebutted below.

[3] Plaintiff submits a declaration of Richard O'Brien, which asserts largely irrelevant information improper on a motion to dismiss; in any event it only confirms Plaintiff's delay and that the parties had no communication for over six years.

1

facts or legal arguments to overcome that presumption of laches, the defense has been proven as a matter of law and Plaintiff's claims must be dismissed in their entirety.[4]

## ARGUMENT

### I. PLAINTIFF'S ARGUMENTS THAT LACHES CANNOT BE INVOKED TO BAR ITS CLAIMS ARE BASELESS

Plaintiff's threshold legal arguments to avoid or limit the application of laches are without merit, asserted to distract from governing law and dispositive facts.

#### A. Defendants Fully Stated the Grounds of Their Motion

Contrary to Plaintiff's contention, Defendants' motion papers and other filings comply with the federal rules, local rules of the Southern District of New York, and this Court's individual rules. They seek dismissal of the FAC *in its entirety* on the ground of laches, pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff clearly has notice of the relief sought and grounds for same, ignoring that the Court granted Defendants leave to file the Motion on these grounds following an exchange of pre-motion letters and argument at a pre-motion conference attended by Plaintiff's counsel. Plaintiff's arguments to the contrary, Opp'n at 7-8, are patently baseless.[5]

#### B. Laches Bars Both Injunctive Relief and Damages

Plaintiff claims laches cannot be invoked as a defense to an action for damages. Opp'n at 8. Not true. Courts in this Circuit have long held that, in the context of trademark infringement, the laches defense applies to both injunctive relief and monetary damages. *See, e.g., Federal*

---

[4] Plaintiff also completely fails to demonstrate any support for its dilution claims, because its Alleged Mark is not famous or strong as a matter of law, as is evident from Plaintiff's pleading and other judicially noticeable facts, which Plaintiff does not even attempt to dispute.

[5] Plaintiff of course has no authority for its erroneous contention that, notwithstanding knowing dismissal is sought on its entire complaint, certain claims nonetheless survive.

2

*Treasury Enters. Sojuzplodoimport v. Spirits Int'l, B.V.*, 56 F. Supp. 3d 383, 387 (S.D.N.Y. 2014) ("laches bars both damages and injunctive relief" for trademark infringement); *Deere & Co. v. MTD Holdings Inc.*, 2004 WL 324890, at *18 (S.D.N.Y. Feb. 19, 2004) ("Although laches is an equitable defense, it can be applied in a trademark infringement action to bar both injunctive relief and monetary damages"); *Harley-Davidson, Inc. v. O'Connell*, 13 F. Supp. 2d 271, 279 (N.D.N.Y. 1998) ("[I]n the context of a trademark action [laches] may be applied to bar both injunctive relief and damages.") (cited by Plaintiff, Opp'n at 16); *Avon Prods., Inc. v. S.C. Johnson & Son, Inc.*, 984 F. Supp. 768, 798 (S.D.N.Y. 1997) (dismissing Lanham Act claim for injunctive relief and monetary damages on laches grounds); *see also Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 822 (7th Cir. 1999) ("The Lanham Act specifically contemplates that both injunctive relief and awards of damages . . . shall be subject to . . . the doctrine of laches."). Plaintiff notably fails to cite a single case in which a court held that laches could not be applied to an action for trademark infringement damages. Instead, it cites to cases that have nothing to do with trademark infringement, and which are therefore inapplicable.[6] The principles discussed in the above cases are what govern here, routinely cited by courts in trademark disputes.

### C. The Continuing Exploitation by Defendants Does Not Save Plaintiff's Claims

Plaintiff claims laches cannot bar the action in its entirety because the alleged infringement is continuous. Opp'n at 9-10. Again, Plaintiff is wrong. Contrary to Plaintiff's

---

[6] S*ee, e.g, Ogilvy Grp. Sweden v. Tiger Telematics, Inc.*, 2006 WL 547785 (S.D.N.Y. Mar. 7, 2006) (breach of contract action); *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257 (2d Cir. 1997) (§ 1983 action); *Ecumenical Task Force of the Niagara Frontier, Inc. v. Love Canal Area Revitalization Agency*, 179 A.D.2D 261 (4th Dep't 1992) (administrative action to challenge state agency findings); *Oneida Cty., N.Y. v. Oneida Indian Nat'n of New York State*, 470 U.S. 226 (1985) (action over possessory rights to federal land).

contentions, the Second Circuit has explicitly rejected the argument that the continuous nature of the alleged trademark infringement is an excuse for Plaintiff's delay in filing suit. *See Solow Bldg. Co., LLC v. Nine West Grp., Inc.*, 2001 WL 736794, at *4 (S.D.N.Y. June 29, 2001) (Chin, J.), *aff'd*, 48 F. App'x 15 (2d Cir. 2002) (holding that laches barred claims where plaintiff "took no action *even as defendants 'continued to use the name[s] . . . openly and notoriously*'") (emphasis added). Then-District Judge Chin's holding (affirmed by the Second Circuit), is in line with the long-held view that "the notion of a 'continuing wrong' is a strong justification **for** application of the doctrine of laches, for a party aggrieved by a trademark use could delay filing suit indefinitely, while prejudice to the trademark user increases." *Bridgestone/Firestone Res., Inc. v. Automobile Club De L'Quest De La France*, 245 F.3d 1359, 1364 (Fed. Cir. 2001) (emphasis added); *Vaad L'Hafotzas Sichos*, *Inc. v. Kehot Publ'n Soc.*, 935 F. Supp. 2d 595, 602 (E.D.N.Y. 2013) ("Without [the laches] defense, 'a plaintiff could delay filing suit indefinitely.'"); *Hot Wax,* 191 F.3d at 821 ("Without the availability of the application of laches to a claim arising from a continuing wrong, a party could, theoretically, delay filing suit indefinitely. It would certainly be inequitable to reward this type of dilatory conduct and such conduct would necessarily warrant application of laches in appropriate circumstances."). Therefore, even though "trademark infringement is a 'continuing wrong,' laches bars both damages and injunctive relief." *Spirits Int'l B.V.*, 56 F. Supp. 3d at 387; *see also Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191-93 (2d Cir. 1996) (upholding laches finding notwithstanding continuing nature of misleading advertisements).

Plaintiff largely relies on non-trademark cases concerning the application of the statute of limitations—not laches,[7] but "it is almost always laches, *not the statute of limitations*, that is invoked to determine the availability of both injunctive and monetary relief" for alleged trademark infringement. *Vaad L'Hafotzas Sichos,* 935 F. Supp. 2d at 602 (citing 6 McCarthy on Trademarks § 31:1) (emphasis added); *see also Conopco,* 95 F.3d at 191 ("[L]aches is an equitable defense, employed *instead* of a statutory time-bar . . . .") (emphasis added); *Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209, 220 (3d Cir. 2021) ("The Lanham Act does not contain a statute of limitations and instead subjects all claims to the 'principles of equity,' such as laches.").

## II. PLAINTIFF IGNORES THE GOVERNING LAW ON THE PRESUMPTION OF LACHES

As explained in Defendants' opening brief, under clear Second Circuit law, a "presumption of laches" applies where the analogous state statute of limitations has run—in this case, after six years. The burden then *shifts to the Plaintiff* to demonstrate that its delay was reasonable, and that there is no prejudice to Defendants. *See Conopco,* 95 F.3d at 191[8]; *see also Excelled Sheepskin & Leather Coat Corp. v. Or. Brewing Co.*, 897 F.3d 413, 419 (2d Cir. 2018) ("The laches clock begins to run when the trademark owner 'knew or should have known . . .

---

[7] The only case Plaintiff cites that discusses the doctrine of laches is the wholly inapposite *Capruso v. Vill. Of Kings Point*, 992 N.Y.S.2d 469 (2014), which is not a trademark case. There, the court held that laches was inapplicable because it was being interposed against the government acting in its official capacity to enforce a public right or protect a public interest.

[8] Plaintiff attempts to distinguish *Conopco* on the facts, Opp'n at 11-12, but ignores that Defendants cite *Conopco* for its clear recitation of the Second Circuit authority on the presumption of laches, not its unique facts. In fact, unlike the plaintiff in *Conopco*, who filed suit less than six years after discovering the alleged infringement, Plaintiff here admittedly sat on its rights for **more than six years**. FAC ¶ 39. *See Conopco*, 95 F.3d at 192.

that [it] had a provable infringement claim against [the infringer].'"). The undisputed facts establish that Plaintiff was aware of, and objected to, the alleged infringement since at least 2013 but remained silent from 2014 to 2021 while Defendants exploited their mark. FAC ¶ 39. Accordingly, the presumption unquestionably applies and the burden shifted to Plaintiff.

Nonetheless, Plaintiff refuses to recognize that it has the burden to overcome the presumption of laches under governing law. Plaintiff tries to shift the burden back to Defendants to establish the elements of unreasonable delay and prejudice. Plaintiff has it backwards. Plaintiff's own admitted and undisputed delay triggers the presumption of laches, thus, unreasonable delay and prejudice "***must*** be inferred, absent rebuttal evidence." *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1037 (Fed. Cir. 1992) (emphasis in original). Here, as Defendants have shown, the FAC "clearly indicates that plaintiff commenced this action outside the limitations period," and therefore the burden shifts to Plaintiff to show "why the laches defense ought not be applied in the case." *Solow*, 2001 WL 736794, at *3 & n.5.

Plaintiff's conduct is analagous to the conduct at issue in the *Fitzpatrick* and *Solow* cases, where the courts on Rule 12(b)(6) motions held there was a presumption of laches due to the plaintiff's admitted delay in bringing suit more than six years after knowledge of the alleged infringement. *Fitzpatrick v. Sony-BMG Music Entm't, Inc.*, 2007 WL 2398801, at *3 (S.D.N.Y. Aug. 15, 2007); *Solow*, 2001 WL 736794, at *3. Plaintiff ignores these cases, in an unavailing effort to avoid its burden, which it cannot meet. Plaintiff also tries to avoid its burden by discussing a purported "six-part test" to determine whether Plaintiff has a reasonable excuse for the delay. This test does not appear to have explicitly been adopted by the Second Circuit, but in any event, it is not what governs. Rather, the Second Circuit law of a laches presumption

6

governs, which shifted the **burden to Plaintiff** to show justification for its delay, namely "that [Defendant] has made recent inroads in the plaintiff's interests, such as by entering the plaintiff's geographic market, altering a mark to make it more similar to the plaintiff's, or extending a mark to goods or services that more directly compete with the plaintiff's." *Solow*, 48 F. App'x at 15 (internal citations omitted). None of this occurred.

### III.  PLAINTIFF FAILS TO REBUT THE PRESUMPTION OF LACHES

To the extent Plaintiff half-heartedly tried to meet its burden to excuse its unreasonable delay, or counter the inferred prejudice to Defendants, its efforts fail.

*First,* Plaintiff's argument regarding "ongoing settlement negotiations" is patently misleading and in no way excuses Plaintiff's delay. In the declaration of Richard O'Brien, Plaintiff attaches communications outside the record, the contents of which are not judicially noticeable, *see Columbia Cas. Co. v. Neighborhood Risk Mgmt. Corp.*, 2015 WL 3999192, at *4 (S.D.N.Y. June 29, 2015). However, to the extent they are considered, they simply reaffirm that *Plaintiff's last communication with Defendants before threatening this action was in 2014.* FAC ¶ 39; *see also* Opp'n at 24 (admitting that "September 2014" was "when counsel for plaintiff sent the last settlement letter to Defendants"). There were no " ongoing" negotiations; Plaintiff has supplied evidence of none. The parties' 2013/2014 communications all undisputably occurred **more than six-years before filing suit** and do not "rescue [Plaintiff] from its inexcusable neglect." *Baker Mfg. Co. v. Whitewater Mfg. Co.*, 430 F.2d 1008, 1013 (7th Cir. 1970)[9]; *see also*

---

[9] Plaintiff continues to intentionally misrepresent the ultimate holding in *Baker,* by citing the district court holding that was *expressly criticized on appeal*, and even after Defendants made note of this misrepresentation in their opening brief. Memo. at 14-15.

*Harley-Davidson*, 13 F. Supp. 2d at 282 (prior negotiations did not excuse delay where there was eight-year gap between collapse of negotiations and filing of lawsuit).

*Second,* Plaintiff's contention that it is somehow excused because Defendants allegedly have "unclean hands" regarding their status as a performing band is meritless. Opp'n at 18-23. Plaintiff mischaracterizes the social media posts as a decision to permanently disband (there was no such decision; DARKSIDE would only stop performing "**for now**").[10] Whether or not there were ongoing live performances is not the point; what is dispositive is that Defendants ***exploited the mark DARKSIDE in commerce*** continuously throughout the six years for DARKSIDE's ***music***, including sales of its recordings. Ostensibly, Plaintiff brought this suit to challenge the use of the mark—the same mark Defendants consistently used—on a *new recorded album* over two years in the making. Lichtman Decl. Ex. F.

This ongoing exploitation is undisputed, as Plaintiff alleged that ***Defendants have consistently exploited the name DARKSIDE in commerce on its music throughout the entire period of Plaintiff's delay***. *See* FAC ¶ 36[11]; *see also* Memo. at 16-17; Lichtman Decl. Ex. C, S;

---

[10] Plaintiff also tries to distort the parties' communications, to no avail. As is obvious from the face thereof, *none* of them admit any wrongdoing by Defendants (there was no such admission) or commit to a cessation of the use of their mark (to the contrary, exploitation was openly and notoriously continued).

[11] Plaintiff's allegations are binding admissions "throughout the course of the proceeding." *See Setevage v. Dep't of Homeland Sec.*, 539 F. App'x 11, 13 (2d Cir. 2013) (quoting *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528–29 (2d Cir. 1985)). Plaintiff's self-serving attempt to disavow its admissions is unavailing. Opp'n at 21. Plaintiff's contention that it alleged "on information and belief" under Rule 11 that Defendants were "**continuously** perform[ing]" under the name DARKSIDE and "**continued** to sell" DARKSIDE music, FAC ¶ 36 (emphasis added), because it assumed such allegations to be true at the time, Opp'n at 22, is *irreconciliably inconsistent* with Plaintiff's absurd argument that Defendants purportedly "lull[ed] Plaintiff into thinking they were disbanding." Opp'n at 22. Defendants were openly exploiting their mark on their music products, and Plaintiff was fully on notice of same.

*see* 15 U.S.C. § 1114(a). Nowhere in Plaintiff's Opposition is there any challenge (nor can there be) to the judicially noticeable exhibits submitted with the Motion which demonstrate Defendants' open and notorious sale and advertisement in commerce of their DARKSIDE music and merchandise, on their own sites and *via* the streaming service Spotify, for the entire six-year period, using consistently the mark DARKSIDE in commerce. *Id.*[12] Accordingly, Plaintiff has no reasonable excuse for its delay, and it has failed to rebut the presumption of prejudice to Defendants caused by that unreasonable delay.

### IV.    PLAINTIFF FAILS TO REBUT THAT ITS DILUTION CLAIMS LACK MERIT

Plaintiff has no basis whatsoever for its frivolous dilution claims, factually or legally. Plaintiff ignores its admissions that it is an "underground" band that "rarely seeks out publicity," FAC ¶ 148, and that it only invested "tens of thousands" of dollars *in the aggregate* in the Alleged Mark since 1992. FAC ¶ 25. Nor does Plaintiff dispute that it has only **118 monthly listeners** on Spotify. Lichtman Decl. Ex. J. Plaintiff does not and cannot deny that countless other parties—including other metal bands—use some variation of "Darkside," *see* Memo. at 6-7, Lichtman Decl. Exs. K-Q.

---

Lichtman Decl. Ex. C, S. Plaintiff's own binding admissions and the now undisputed, judicially noticeable facts establish Defendants' continuous, open and notorious use of DARKSIDE in commerce. Plaintiff has no viable excuse for sitting on its alleged rights given same.

[12] Plaintiff's further baseless contention (based on zero personal knowledge) that Defendants' consistent sale of DARKSIDE merchandise **for six years** from 2014-2020 was simply an effort to "sell[] off . . . remaining infringing merchandise" is absurd and does not rebut the use. Plaintiff does not and cannot deny that Defendants consistently advertised and sold DARKSIDE merchandise and music up to and through 2020, including through channels that Plaintiff was clearly aware of, when Defendants announced the completion and upcoming release of the next DARKSIDE album, *Spiral*. Lichtman Decl. Ex. F.

9

Notwithstanding these undisputed facts, Plaintiff turns again to misrepresenting the law. It claims that the Second Circuit does not recognize that widely-used marks are "weak" and entitled to less protection. Opp'n at 26. But this basic premise is in fact black-letter law in the Second Circuit. *See, e.g., Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 743-44 (2d Cir. 1998) (courts gauge a mark's strength by considering its "distinctiveness in the marketplace," such that the incorporation of widely-used words weighs against a finding that the mark is strong); *see also Lang v. Retirement Living Publ'g Co., Inc.*, 949 F.2d 576, 581 (2d Cir. 1991). Plaintiff further misrepresents that no case stands for the proposition that fame and strength of a mark may be determined on a motion to dismiss, Opp'n at 25: cases **routinely** dismiss dilution claims on the pleadings (on much stronger allegations of fame than the case at bar). *See* Memo, at 20 (citing cases). Plaintiff also fails to rebut any of the authority cited in Defendants' opening brief, demonstrating that trademark dilution claims are reserved for "famous" marks that are "household words" under federal law or extremely strong marks under New York state law. Memo at 19-20; 23- 25 (citing cases). Plaintiff can never show that the Alleged Mark is either, and its conclusory legal claims to the contrary are patently frivolous.[13]

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss the FAC with prejudice.

---

[13] Plaintiff has no basis to request attorneys' fees, including under the Lanham Act, which provides an award of attorney fees to "the prevailing party" in "exceptional cases." 15 U.S.C. § 1117(a). A denial of the Motion would not accord Plaintiff "prevailing party" status. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Should Defendants prevail, Defendants reserve the right to seek attorneys' fees they have been forced to expend defending this baseless, opportunistic lawsuit.

DATED:  New York, New York  
         October 7, 2021

MITCHELL SILBERBERG & KNUPP LLP

By: /s/ Christine Lepera  
    Christine Lepera  
    Leo Lichtman  
    437 Madison Ave., 25th Floor  
    New York, New York 10022  
    Telephone: (212) 509-3900  
    Facsimile: (212) 509-7239  
    Email: ctl@msk.com  
    Email: lml@msk.com

*Attorneys for Defendants Nicolas Jaar and David Harrington p/k/a DARKSIDE and Matador Recordings, LLC d/b/a Matador Records*