UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SATAN WEARS SUSPENDERS, INC.,

                        Plaintiff,

         - against -

NICOLAS JAAR, DAVID HARRINGTON, and
MATADOR RECORDINGS, LLC,

                       Defendants.

**OPINION AND ORDER**
21 Civ. 812 (ER)

Ramos, D.J.:

    Satan Wears Suspenders, Inc. ("Plaintiff"), a rock band and record label that operates under the name "Darkside," brings this action against Nicolas Jaar and David Harrington, a musical duo, and Matador Recordings, LLC, a record label ("Matador") (collectively, "Defendants"). Defendants Jaar and Harrington also operate a musical group under the name "Darkside." Plaintiff alleges that Defendants' use of "Darkside" infringes on Plaintiff's superior right to the name.

    Against Jaar and Harrington, Plaintiff alleges trademark infringement, unfair competition, and false designation of origin under the Lanham Act; dilution and deceptive trade practices under the laws of New York State; and unfair competition under New York common law. Doc. 27. Against Matador, Plaintiff alleges contributory trademark infringement, unfair competition, and dilution, and vicarious trademark infringement, unfair competition, and dilution. *Id.*

    Pending before the Court is Defendants' motion to dismiss Plaintiff's First Amended Complaint (the "FAC") in its entirety on the basis of laches or, alternatively, to dismiss

Plaintiff's federal and state dilution claims[1] pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). Doc. 44. For the reasons discussed below, Defendants' motion to dismiss the FAC in its entirety is granted.

## I.   Factual Background[2,3]

Plaintiff, a New York City-based hardcore punk-rock band and independent record label, has performed and produced sound recordings under the names "Darkside" or "Darkside NYC" continuously since at least August 1992. ¶¶ 9–11. On June 17, 2014, Plaintiff registered "Darkside NYC" (the "Trademark") with the United States Patent and Trademark Office, acquiring exclusive rights to the name when it is used to describe: live musical performances by a band; the production of musical sound recordings; and websites with information about music or entertainment (collectively, the "Trademark Registered Services"). ¶¶ 12–13; *see* Doc. 1-2. Plaintiff has extensively advertised and promoted the Trademark, domestically and internationally, investing tens of thousands of dollars in its brand and cultivating significant goodwill within the music industry and among fans. ¶¶ 23–26. Since its inception, fans have often referred to the band simply as "Darkside." ¶ 21.

In 2011, Defendants Jaar and Harrington formed a musical group called "Darkside"— also known as "Darkside USA" or "Darkside the Band." ¶¶ 29–30. Defendants describe their band as featuring an electronic, psychedelic musical style. *See* Doc. 44 at 4. The duo released a sound recording entitled "Darkside" in November of that year. ¶ 30. Like Plaintiff, Defendants are based in New York; as such, the two bands target the same geographic audience. ¶¶ 33, 48,

---

[1] Because this case is resolvable under laches, the Court need not address Defendants' separate argument to dismiss Plaintiff's dilution claims.

[2] The following facts are drawn from the First Amended Complaint and are assumed true for the purposes of deciding Defendants' motion.

[3] Unless otherwise noted, citations to "¶ _" refer to the First Amended Complaint, Doc. 27.

77. In December 2011, for example, Defendants performed as "Darkside" at the Music Hall of Williamsburg in Brooklyn, New York—a venue at which Plaintiff has also played. ¶¶ 31–32. They have gone on to perform at at least three other venues where Plaintiffs have also performed. ¶ 33.

From 2011 to date, Defendants have "continued to sell music albums and merchandise[] and … to publish music videos and other media" under the name "Darkside," despite their actual or constructive notice of Plaintiff's exclusive rights under the Trademark. ¶¶ 36–37. Under that name, Defendants have provided services expressly reserved to Plaintiff as the holder of the Trademark, such as: creating a website to advertise their music, ¶ 41; Doc. 1-4; distributing sound recordings through Spotify, YouTube, and SoundCloud (e.g., tracks from their 2013 album, "Psychic," ¶ 97), ¶¶ 74, 76; *see* Docs. 1-6, 1-7; performing at venues around the United States, ¶ 146; selling albums and merchandise, ¶ 36; and "constantly" seeking out publicity and media attention to promote their band, ¶ 149.

In as early as 2013, Plaintiff became aware of Defendants use of "Darkside" and made repeated objections to it via two email exchanges and three letters from Plaintiff's then-counsel in 2013 and 2014.[4] ¶ 39; *see* Docs. 48-1–48:5.[5] Plaintiff first reached out to Defendant via email on September 16, 2013, stating that it recently became aware of Defendants' use of "Darkside," that Plaintiff used the name first, and asking whether Defendants "[could] do [something] with

---

[4] The Complaint references no further contact between plaintiff and defendants from 2014 to February 2021, when Plaintiff filed the instant action.

[5] Documents 48-1–48-5 contain communications between Plaintiff and Defendants between 2013 and 2014. The Court takes notice of these materials. In considering a motion to dismiss under Rule 12(b)(6), a district court "can consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). For a document to be incorporated by reference, "the complaint must make 'a clear, definite, and substantial reference to the document[].'" *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003)). Here, the FAC plainly references Plaintiff's "repeated objections . . . in 2013 and 2014[.]"

[their] band name to differentiate [themselves] from [Plaintiff.]" Doc. 48-2 at 1–2. On October 4, 2013, Jake Friedman—who identified himself as Defendants' band's manager—responded, explaining that the bands occupy "different enough space[s]" to "avoid confusion." *Id.* at 1. More specifically, Friedman emphasized the bands' different musical styles, target audiences, and ticket prices. *See id.* He also noted that Defendants had only played one show in New York since 2011. *See id.* That same day, then-counsel for Plaintiff sent Defendants a letter demanding that they "eliminate all use of DARKSIDE immediately," or else risk Plaintiff "tak[ing] any and all steps . . . to protect … [its] trademark and business." *See* Doc. 48-1. In a separate November 5, 2013 email, Friedman proposed that "[f]or all *New York* DARKSIDE performances," Defendants would "demonstrate [their] best efforts to ensure that all online listings are clearly labeled: DARKSIDE (Nicolas Jaar + Dave Harrington). *See* Doc. 48-3 (emphasis added). Then-counsel for Plaintiff subsequently rejected Defendants' offer in a November 15, 2013 letter and counteroffered with the request that Defendants "modify its band name to sufficiently distinguish it from DARKSIDE NYC." *See* 48-4. Ten months later, then-counsel for Plaintiff, "frustrated with [Defendants'] unresponsiveness," wrote again to Defendants, reiterating that they "must either cease use of the word 'DARKSIDE' . . . or . . . amend[] use of the DARKSIDE mark that is sufficiently distinguishable[.]" *See* 48-5 at 1. Defendants, however, continued to operate as "Darkside" through the present, *id.*, as evidenced by the December 21, 2020 release of a new song, "Liberty Bell," and concurrent announcement, via a press release issued that same day, of a forthcoming spring 2021 album, *Spiral* (the "Press Release"), *see* Doc. 1-9.

In 2013 or earlier, New York-based record label, Matador, signed Jaar and Harrington's "Darkside" to its roster. ¶ 97. Since then, Matador has supported the band in various ways, including by: coordinating tours, distributing music, promoting the band's brand, and arranging

4

live appearances under its label.  ¶ 97.  Matador exercises significant control and oversight over Defendants and profits directly from their success.  ¶ 106.

Together with Matador's support, Defendants have garnered a significant following and have established a strong online presence.  ¶¶ 74–77.  Their success, paired with Plaintiff's and Defendants' overlapping geographies, has allegedly caused confusion among fans and prospective fans alike over which band is which.  *See* ¶¶ 79–89.  That confusion has purportedly caused customers to purchase the incorrect albums or concert tickets, develop a negative impression of Plaintiff's band (given Defendants' band's apparently contrasting, electronic-psychedelic musical style), and Plaintiff to lose control over its reputation.  ¶¶ 89–91.

On August 17, 2014, Defendants posted on Twitter that "darkside is coming to an end, for now" and that the band "[will] be playing [its] last show in [B]rooklyn on sept 12."  *See* Doc. 49-1.[6]  Defendants, however, continued to conduct business as "Darkside," publishing a clip of a live performance in 2015, *see* Doc. 45-19, participating in an interview with the music site, Pitchfork, the following year, *see* Doc. 45-20, and continuing to list their music on Spotify, *see* Doc. 45-10; Doc. 44 at 17.

**II.  Procedural History**

On February 1, 2021, Plaintiff filed this action.  Against defendants Jaar and Harrington, plaintiff alleges:  (1) trademark infringement and unfair competition under § 32 (1) of the Lanham Act, 15 U.S.C. § 1114(1); (2) unfair competition and false designation of origin under §

---

[6] Since Fed. R. Evid. 201 permits courts to take judicial notice of any fact that is "not subject to reasonable dispute" because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," this Court takes judicial notice of this Twitter post and the reply tweets. Fed. R. Evid. 201(b)(2); *see* Doc. 47 at 21, n.5 (citing *Distributorsoutlet.com, LLC v. Glasstree*, 2016 WL 3248310, at *2 (E.D.N.Y. June 10, 2016) (taking notice of archived webpages); *Sitney v. Spotify USA, Inc.*, 2019 WL 5555682, at *3 (D. Md. Oct. 28, 2019) ("The Court also takes judicial notice of matters publicly available . . . and in that respect, the Court notes that Spotify, as an online, publicly-available service, affords [plaintiff] an expeditious path to demonstrating that Spotify has distributed his songs.")).

43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A),(c); (3) dilution under the laws of New York State, GEN. BUS. Law § 360-1; (4) unfair and deceptive trade practices under the laws of New York State, N.Y. GEN. BUS. Law § 349; and (5) unfair competition under the common law of the State of New York.  Doc. 27.  Against Matador, Plaintiff alleges:  (6) contributory trademark infringement, unfair competition, and dilution, and (7) vicarious trademark infringement, unfair competition, and dilution.  *Id.*

On July 15, 2021, Defendants submitted a letter motion for a conference on their anticipated 12(b)(6) motion, Doc. 35, to which Plaintiff objected on July 19, 2021, Doc. 36.  The Court held the conference on August 19, 2021, *see* Doc. 40.  On September 9, 2021, Defendants moved to dismiss the First Amended Complaint in its entirety, pursuant to Fed. R. Civ. P. 12(b)(6), with prejudice, on grounds of laches.  Doc. 44.  Alternatively, Defendants seek dismissal of Plaintiff's federal and state dilution claims.  *Id.*

### III. Legal Standard

#### A. FRCP 12(b)(6) Motion to Dismiss Legal Standard

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  However, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## IV. Discussion

### a. Notice

As a preliminary matter, the parties dispute whether Defendants gave Plaintiff adequate notice of their intent to move to dismiss certain causes of action. Specifically, Plaintiff argues that Defendants—in violation of FRCP 7(b)(1)[7] and federal common law—gave facially inadequate notice of their intent to dismiss Plaintiff's federal causes of action for unfair competition and false designation, and New York State causes of action for common law infringement, unfair competition, and unfair deceptive trade practices. Doc. 47 at 7. Plaintiff reasons that Defendants did not include those claims as part of their September 9, 2021 notice of motion (the "Notice of Motion"). *Id.*; *see* Doc. 43.

Plaintiff's argument is without merit. Although controlling precedent makes clear that the notice requirement serves an important role in securing "opportunity for the non-moving party to muster his best argument, to plan his strategy, and to put his best foot forward," *Schlesinger Inv. P'ship v. Fluor Corp.*, 671 F.2d 739, 742 (2d Cir. 1982), the record shows that Defendants informed Plaintiff of their intent to move to dismiss *all* its claims on the basis of laches.[8] That Defendants did not specify the reasons for their motion in their Notice of Motion, *see* Doc. 43, does not render notice inadequate. The first sentence of the Notice of Motion

---

[7] FRCP 7(b)(1) requires an "application to the court for an order [to] . . . state with particularity the grounds therefor, and shall set forth the relief or order sought."

[8] Additionally, Plaintiff does not cite any cases where courts in this district have denied a motion to dismiss on the basis that the defendant failed to give the plaintiff adequate notice.

7

instructs Plaintiff to "PLEASE TAKE NOTICE that upon the accompanying Memorandum of Law, [Defendants move] for an order dismissing the First Amended Complaint[.]" The therein referenced memorandum expressly states that Defendants move to dismiss the FAC "in its entirety and with prejudice[] on the ground of laches, pursuant to Fed. R. Civ. P. 12(b)(6)." *See* Doc. 44 at 1. Furthermore, nearly two months before the Notice of Motion, Defendants' July 14, 2014 letter requesting a pre-motion conference plainly indicated their intent to move to dismiss all of Plaintiff's claims. *See* Doc. 35 ("[T]his entire case is subject to dismissal on the ground that it is barred by laches based on Plaintiff's own admissions.") Discussion during the ensuing August 19, 2021 conference was, moreover, entirely consistent with that position. *See* Doc. 40, Transcript of Premotion Conference, at 4:25–5:5 ("[T]his is a laches dispositive motion because it's past the six-year statute of limitations … and it's very clear … that the filing was past the six years."). Therefore, Defendants adequately notified Plaintiff.

 **b. Laches**

  Laches is an equitable defense that "bars a plaintiff's equitable claim where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 259 (2d Cir. 1997) (internal quotation marks and citation omitted). To prevail on a laches defense, a defendant must show: "(1) that plaintiff had knowledge of defendant's use of its marks, (2) that plaintiff inexcusably delayed in taking action with respect thereto, and (3) that defendant will be prejudiced by permitting plaintiff inequitably to assert its rights at this time." *Vaad L'Hofotaz Sichos, Inc. v. Kehot Publ'n Soc'y, a division of Merkos L'Inyonei Chinuch, Inc.*, 697 F. App'x 63, 64 (2d Cir. 2017) (summary order) (internal quotation marks and citations omitted).

"In general, the defense of laches is not raised in a motion to dismiss." *Fitzpatrick v. SonyBMG Music Entertainment, Inc.*, 2007 WL 2398801, at *3 (S.D.N.Y Aug. 15, 2007). But "in certain circumstances, when the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar, a court may consider the defense on a motion to dismiss." *Id.* (quoting *Lennon v. Seaman*, 63 F. Supp. 2d 428, 439 (S.D.N.Y. 1999), *aff'd mem.*, 48 F. App'x 15 (2d Cir. 2002)). "Although laches is an equitable defense, employed instead of a statutory time-bar, analogous statutes of limitation remain an important determinant in the application of a laches defense. Because the Lanham Act establishes no limitations period for claims alleging unfair competition or false advertising, and because there is no corresponding federal statute of limitations," courts look to analogous state statute of limitations. *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996). The relevant statute of limitation for federal trademark infringement is six years. *See id.* at 191 ("[V]irtually every district court in this Circuit that has addressed the question [has held] that a six year fraud statute … is applicable in the context of misleading advertisement."). The statute of limitations for New York's anti-dilution statute is three years. *See Greenlight Cap., Inc. v. GreenLight (Switzerland) S.a.*, 2005 WL 13682, at *7 (S.D.N.Y. Jan 3, 2005) (citing N.Y. C.P.L.R. § 214(2)).

Here, the parties dispute: (1) the availability of laches to defendant, (2) who bears the burden of proving laches, (3) whether laches applies, and (4) if it does, to which claims.

### i. Availability of Laches Defense

Plaintiff argues that Defendants cannot allege laches because laches is available only against claims pled in *equity*, and its trademark claims are all based at *law*. Doc. 47 at 8–9 (citing *Ogilvy Group Sweden v. Tiger Telematics, Inc*, No. 05 Civ. 8488, 2006 WL 547785, at *2

9

(S.D.N.Y. Mar. 7, 2006) ("Laches is an equitable doctrine and cannot be invoked as a defense to a claim for damages.")). Plaintiff, however, points to no instances where this Court—or any other controlling authority—has deemed laches unavailable to a defendant in a *trademark* action. That's because governing caselaw points to the opposite conclusion.

The decisions of this District make clear that in the context of a trademark dispute, defendants may allege laches to bar both injunctive relief and monetary damages. *See Federal Treasury Enters. Sojuzplodoimport v. Spirits Int'l, B.V.*, 56 F. Supp. 3d 383, 387 (S.D.N.Y. 2014) ("[A]lthough trademark infringement is a continuing wrong, laches bars both damages and injunctive relief") (internal quotation marks omitted); *see also Deere & Co. MTD Holdings Inc.*, 2004 WL 324890, at *18–21 (S.D.N.Y. Feb. 19, 2004) (applying laches to bar trademark infringement and unfair competition claims, and noting that "[a]lthough laches is an equitable defense, it can be applied in a trademark infringement action to bar both injunctive relief and monetary damages") (citing *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1040–41 (2d Cir. 1980)). Accordingly, laches is available to Defendants.

### ii. Burden of Proof

The parties disagree over who bears the burden of proving the elements of laches. Plaintiff assumes that at this stage of litigation, Defendants bear the burden of proof. *See* Doc. 47 at 10–11. But that is not always the case. Even at the motion to dismiss stage, caselaw makes clear that "[i]f the plaintiff fails to bring suit within the six-year statute of limitations, a presumption of laches will apply, and 'the burden will be on the *complainant* to aver and prove the circumstances making it inequitable to apply laches to his case.'" *Fitzpatrick*, 2007 WL 2398801, at *2 (quoting *Conopco*, 95 F.3d at 191 (emphasis added) (alterations omitted)). If the

analogous statutes of limitation have not expired, the burden of proof remains with defendants. *Id.*

The question therefore becomes: Has Plaintiff sat on its claims for longer than the relevant statutes of limitation? The answer is yes. On its face, the FAC concedes that Plaintiff became aware of Defendants' purportedly infringing conduct in as early as 2013. ¶ 39 ("Defendants Jaar and Harrington, despite repeated objections from Plaintiffs in 2013 and 2014, continue to use a name confusingly similar to Plaintiffs' mark[.]"). Therefore, more than six years passed before Plaintiff filed the instant action in 2021. For that reason, Plaintiff bears the burden of disproving the elements of laches. *See Fitzpatrick*, 2007 WL 2398801 at *2.

### iii. Application

To rebut the elements of laches, Plaintiff argues that it was reasonably and excusably delayed in acting to enjoin Defendants' conduct and, alternatively, that Defendants have not shown that they have been prejudiced by permitting Plaintiff to assert its rights at this time.[9] Both these claims are without merit.

### 1. Unreasonable Delay

"To rebut a presumption of laches in a trademark case, a plaintiff generally must show that a defendant has made recent inroads on the plaintiff's interests, such as by entering the plaintiff's geographic market, *see Fourth Toro Family Ltd. P'ship v. PV Bakery, Inc.*, 88 F. Supp. 2d 188, 197 (S.D.N.Y.2000), altering a mark to make it more similar to the plaintiff's, *id.*, or extending a mark to goods or services that more directly compete with the plaintiff's, *see Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 498 (2d Cir. 1961)." *Solow Bldg. Co.,*

---

[9] The parties do not dispute the first element of laches: that Plaintiff knew of Defendants' use of its mark.

*LLC v. Nine West Grp., Inc.*, 48 F. App'x 15, 15–16 (2d Cir. 2002) (summary order). But Plaintiff makes no such arguments. Nor can they. The FAC expressly indicates that since Plaintiff became aware of Defendants' band in 2013, the bands have targeted the same geographic area, used the same name, and offered all of the same Trademark Registered Services. *See generally* Doc. 27. None of these facts are new, such that they would excuse delay in bringing suit.

To overcome the presumption of unreasonable delay, Plaintiff argues, instead, that it was engaged in discussions with Defendants to resolve their conflict outside of court and that "plaintiffs may legitimately put off filing suit when pursuing settlement negotiations with the alleged infringer." *Id.* at 15 (citing *Clean Crawl, Inc. v. Crawl Space Cleaning Pros, Inc.*, No. C17-1340 (BHS) (W.D. Wash. Nov 5, 2019). But even if it were the case that "attempt to negotiate a settlement provides some basis for a reasonable excuse," caselaw also suggests that "negotiations must ordinarily be continuous and bilaterally progressing, with a fair chance of success[.]" *Harley-Davidson, Inc. v. O'Connell*, 13 F. Supp. 2d 271 (N.D.N.Y. 1998) (internal quotation marks and citations omitted).

Here, the FAC shows that negotiations between Plaintiff and Defendants were anything but continuous; indeed, the FAC does not allege any negotiations between the parties since 2014. *See generally* Doc. 27; *see supra* Sec. I at 3–4 (describing the parties' negotiation efforts reflected in Documents 48-1–48-5). Plaintiff does not offer evidence of any correspondence after that September 19, 2014 letter. *See* Doc. 48-5. Failure to negotiate for such an extended period of time renders Plaintiff's first argument without merit. *See Harley-Davidson*, 13 F. Supp. 2d at 282 (finding that prior negotiations that ended eight years before plaintiffs filed lawsuit did not excuse delay).

Plaintiff alternatively argues reasonableness on grounds that Defendants have "unclean hands." *See Hermes Intern. V. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107 ("[T]he fundamental principle that 'he who comes into equity must come with clean hands" is a "good-faith component of the laches doctrine."). To prove that Defendants have acted in bad faith, Plaintiff makes two points: (1) that Defendants held out to the world that they had dissolved their band, and (2) that Defendants misrepresented to the Court that they have continuously operated as a band. *See* Doc. 47 at 18–19. To support these claims, Plaintiff cites Defendants' August 17, 2014 Twitter post, *see* Doc. 49-1 ("darkside is coming to an end, for now. we'll be playing our last show in [B]rooklyn on sept 12"), and various "reply tweets," reflecting fans' belief that Defendants' band had dissolved, *see* Doc. 47 at 19–21. Plaintiff contends that because everyone thought Defendants were breaking up, its delay was reasonable, at least until Defendants announced their new album in 2020. *See* Doc. 1-9.

As a preliminary matter, the Court notes that the August 17 Twitter post does not announce Defendants' band's dissolution; it simply states that it was coming to an end, "for now." Doc. 49-1. More to the point, although Defendants concede that their band "*did* take a temporary break from live performances," Doc. 44 at 8 (emphasis added), the dispositive question for the Court is *not* whether Plaintiff thought Defendants had stopped performing; rather, it's whether Plaintiff knew that Defendants were continuing to exploit the Trademark (e.g., by selling music or merchandise and publishing videos). The FAC concedes just that: "Upon information and belief, . . . Defendants Jaar and Harrington have . . . *continued* to sell music albums and merchandise[] and *continued* to publish music videos and other media [under the name Darkside], since [their band's inception.]" ¶ 36 (emphasis added). Judicially noticeable evidence further reinforces that contention. In 2015, for example, Defendants

13

published a clip of their band's live performance, *see* Doc. 45-19, and the following year, Defendant Jaar participated in an interview with the music site, Pitchfork, during which he stated that he "can't wait to potentially [create music with Harrington] again," *see* Doc. 45-20 at 8. Moreover, Defendants' music remained on Spotify between 2014 and 2020—presenting the *same* potential to confuse Plaintiff's fans as it does now. *See* Doc. 45-10; Doc. 44 at 17.[10] Whether or not Defendants took a hiatus from performing does not change these facts.

Thus, even in the six years after Defendants purportedly dissolved, Plaintiff knew that Defendants were using its Trademark but took no legal action against them. Plaintiff's delay is therefore unreasonable.[11]

### 2. Prejudice

"A defendant has been prejudiced when the assertion of a claim available some time ago would be 'inequitable' in light of the delay in bringing that claim." *Solow Bldg. Co., LLC v. Nine West Grp., Inc.*, 2001 WL 736794, at *5 (S.D.N.Y. June 29, 2001) (internal quotation marks omitted), *aff'd*, 48 F. App'x 15 (2d Cir. 2002). And, as is the case here, "[w]here there is no excuse for delay . . . defendants need show little prejudice" to prevail on a laches defense. *Stone v. Williams*, 873 F.2d at 625 (citing *Larios v. Victory Carriers, Inc.*, 316 F.2d 63, 67 (2d Cir. 1963)).[12] Thus, the bar for Defendants to show prejudice is low, and the bar for Plaintiff disprove prejudice is high.

---

[10] Like Plaintiff's Twitter exhibits, Docs. 45-19 and 45-20 are judicially noticeable pursuant to F.R.C.P 201(b)(1). Evidence of Defendants' continued Spotify presence is, too, noticeable under that rule. *See Sitney*, 2019 WL 5555682, at *3 (D. Md. Oct. 28, 2019).

[11] Relatedly, Plaintiff also asserts that "the doctrine of equitable estoppel applies and tolls the statute of limitations" because "Plaintiff reasonably relied on Defendants' representations that they were no longer performing to its detriment[.]" Doc. 47 at 23. For the reasons already discussed in this section, the Court rejects this contention as baseless.

[12] It is not the case, as Plaintiff alleges, *see* Doc. 47 at 14, that when, as here, the plaintiff bears the burden of disproving laches, the defendants must prove detrimental reliance. *See generally Fitzpatrick*, 2007 WL 2398801 (placing no such burden on defendant).

Here, Plaintiff fails to rebut the presumption of prejudice. Plaintiff argues that Defendants have failed to show that they would have acted differently had Plaintiff filed its suit sooner and that Defendants did not invest enough into their infringing trademark to suffer the requisite degree of prejudice. Doc. 47 at 11–12. With respect to its latter point, the FAC expressly states that Defendants have invested actively and constantly in their Darkside brand.[13] *See, e.g.*, ¶ 97 ("Matador . . . actively promotes the band, including providing financing and arranging touring, promotions, live appearances, and including funding and distribution of its sound recordings[.]"); ¶ 149 ("[Defendants] crave publicity and constantly feel the need to be seen and referenced in the media."). The notion that Defendants have invested so little in their band that they would not be prejudiced by Plaintiff's failure to act sooner is baseless, even when the Court construes the facts in the light most favorable to Plaintiff.

By itself, the fact that Defendants have invested considerable energy into their Darkside brand, and for so long, is sufficient to show that Defendants may have branded themselves differently had Plaintiff brought forth this action sooner. *Accord Conopco*, 95 F.3d at 192 ("By waiting over five years to assert its present claim, [plaintiff] precluded the possibility that [defendant] could effectively adopt an alternative marketing position."). The fact that Plaintiff has chosen "to resurface . . . on the cusp of [Defendants'] new album release two years in the making," "a vulnerable time for any artist," as Defendants argue, renders the prejudice to Defendants even stronger. Doc. 44 at 18. Thus, Plaintiff fails to rebut the presumption of prejudice.

---

[13] Though it may have been the case in *Conopco, Inc.* that the defendant invested "massive resources" in its infringing trademark, the Second Circuit, there, did not suggest that it was necessary for the defendant to do so to show prejudice—particularly when, as here, the onus of proving lack of prejudice lies with the plaintiff. *Conopco, Inc.*, 95 F.3d at 192.

15

For the above-stated reasons, Plaintiff fails to refute Defendants' laches defense.[14] Next and lastly, the Court considers Plaintiff's argument that laches may bar some—but not all—of its claims.

### iv. Laches Applies to All Claims

Plaintiff argues that because each "infringement is a distinct harm giving rise to an independent claim for relief," *Stone v. Williams*, 970 F.2d 1043 (2d Cir. 1992), "only claims accruing more than six years *before* the complaint was filed are subject to dismissal," Doc. 47 at 9. Plaintiff argues because "Defendants' infringement of the Trademark has been ongoing and continues to the present[,] . . . each such act is actionable if it transpired within six years of when the complaint was filed." *Id.* at 10.

While Plaintiff is correct that the Complaint alleges that Defendants' use of the Trademark has continued through the present, *see* ¶ 36, it ignores controlling law. *Stone*—the case on which Plaintiff principally relies for the proposition that each of Defendants' infringements constitute a fresh claim for relief—concerns copyright infringement, not trademark infringement. The relevant authorities that *have* addressed this question in the context of a trademark dispute expressly reject Plaintiff's theory of continuous infringement.

Another court in this district in *Solow Bldg. Co.*, 2001 WL 736794, at *4, for example, found laches to bar trademark infringement claims where plaintiff "took no action even as defendants continued to use the name[s] . . . openly and notoriously." Furthermore, the

---

[14] Plaintiff makes two other claims, both without merit. First, the idea that Defendants' knowledge of Plaintiff's superior claim to the Trademark renders laches inapplicable has no basis and is contrary to the underlying public policy of laches. On more than one occasion, courts in this district have found that defendants who knowingly operate under someone else's Trademark can still assert laches. *See, e.g Harley-Davidson,* 13 F. Supp. 2d at 280–81. And no controlling authority has held that it is necessary for a defendant to discuss a six-factor test in order to disprove reasonable excuse. *See, e.g.*, *Solow Bldg. Co.*, F. App'x at 15.

proposition that a defendant's continuous Trademark infringement continually equips a trademark holder with new causes of action against her infringers is at odds with the policy underlying laches. *See Bridgestone/Firestone Res., Inc. v. Automobile Club De L'Quest De La France*, 245 F.3d 1359, 1364 (Fed. Cir. 2001) ("[T]he notion of a 'continuing wrong' is a strong justification for application of the doctrine of laches, for a party aggrieved by a trademark use could delay filing suit indefinitely, while prejudice to the trademark user increases."). The Court therefore concludes that the defense of laches applies to all of Plaintiff's claims.

### c. Conclusion

For the foregoing reasons, the Defendants' motion to dismiss Plaintiff's First Amended Complaint in its entirety is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 43, and close the case.

It is SO ORDERED.

Dated:   June 16, 2022
         New York, New York

                                                      Edgardo Ramos, U.S.D.J.